UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| LEO PINEDA | ) | |
| | ) | |
| v. | ) | |
| | ) | NO. 2:06-CV-279 |
| | ) | NO. 2:05-CR-24 |
| UNITED STATES OF AMERICA | ) | Judge Greer |

## MEMORANDUM OPINION

Leo Pineda ("petitioner" or "Pineda"), a federal prisoner, has filed a "Petition Under 28 USC § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody", [Doc. 48]. The United States has responded in opposition to the motion [Doc. 53] and the matter is now ripe for disposition. The Court has determined that the petition and record of prior proceedings in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons which follow, the petitioner's § 2255 petition lacks merit, and the petition will be DENIED.

**I.    Procedural and Factual Background.**

Pineda was indicted by the federal grand jury on March 8, 2005, in a three count indictment which charged him in Count I with conspiracy to distribute and to possess with the intent to distribute methamphetamine, in Count II with knowingly

and intentionally using a communication facility, that is a telephone, to facilitate a violation of 21 U.S.C. § 846 and in Count III with knowingly distributing and possessing with the intent to distribute 500 grams or more of methamphetamine, [Doc. 1]. On November 21, 2005, Pineda entered a guilty plea to Count I pursuant to a negotiated plea agreement, [Doc. 30]. Pineda was sentenced on May 22, 2006, to a term of imprisonment of 87 months, to be followed by a term of three years of supervised release. Judgment was entered on May 30, 2006, [Doc. 46]. Petitioner did not appeal his conviction or sentence and his sentence was considered final on June 13, 2006. The petitioner timely filed this petition pursuant to 28 U.S.C. § 2255 on December 15, 2006.

An agreed factual basis [Doc. 31] was filed along with the petitioner's plea agreement in which he stipulated to certain facts in the case:

> In August, 2003, Mark Bustos began negotiating with Leo Pineda (Atlanta, GA) about the delivery of cocaine and methamphetamine to Bustos in Tennessee. These negotiations included recorded and unrecorded telephone calls between Bustos, Pineda and others. Pineda had supplied Bustos' brother (Francisco Bustos) in the past with cocaine and methamphetamine.
>
> On August 11, 2003, Bustos met with Pineda and Alberta Chavez Arteaga in Atlanta, Georgia. The meeting was surveilled by the FBI and Pineda said he had cocaine available from California at $19,000 per kilogram. Pineda also quoted the price of "crystal" methamphetamine at $10,500 per half kilogram and "crank" methaphetamine at

2

$12,000 – $14,000 per kilogram. During the meeting, Bustos advised Pineda and Arteaga he would contact them about future deliveries in Tennessee.

On August 12, 2003, Bustos initially talked to Arteaga by phone and later made a recorded call to Pineda. Pineda quoted the price of cocaine again at $19,000 per kilogram but said the quantity [sic] was inferior. He told Bustos he couldn't deliver the cocaine. He said his associate Arteaga would make delivery for him. Later that day, Bustos received a return call from Pineda who said he was out of cocaine but could deliver one kilogram of "crank" to Bustos in Tennessee. Bustos talked again that day to Pineda and advised he would wait a week to obtain both cocaine and "crank" from Pineda. The calls on August 13, 2003 were recorded.

On August 26, 2003, Bustos made a recorded call to Arteaga setting up delivery for the next day. On August 27, 2003, Arteaga delivered approximately four pounds of methamphetamine to Tennessee and was arrested by law enforcement in Greene County. Arteaga was interviewed and said he spoke with Pineda before leaving Atlanta and was told to meet two of Pineda's associates at a grocery store to pick up the methamphetamine to be delivered to Bustos. Arteaga said he did meet two Hispanic males who provided him with the methamphetamine he delivered to Tennessee.

On August 28, 2003, Bustos made a recorded call to Pineda to report Arteaga had not shown up with the meth. This was their last conversation since Pineda disconnected his telephone the next day. Subpoenaed telephone records verify contacts between Bustos, Pineda and Arteaga. (17 calls between August 1, 2003 and August 27, 2003).

The methamphetamine seized from Arteaga was analyzed by the TBI laboratory in Knoxville, Tennessee. They

3

determined there were 3.9 pounds of methamphetamine.

**II.    Standard of Review.**

This Court must vacate and set aside petitioner's conviction upon a finding that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255(b). Under Rule 8(a) of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

4

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). Relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley,* 512 U.S. 339 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir. 1996), *cert. denied*, 517 U.S. 1200 (1996).

**III. Analysis and Discussion.**

Pineda raises two grounds for relief in his § 2255 petition:

> Gound One: Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge. Because when I made my plea of guilty my attorney said me that he got an agreement with the prosecuter which I can't get more than 5 years and when I was sentenced he said me 87--- months which I understand is too much time to do.

> Ground Two: Denial of effective assistance of the counsel. Because my counsel only said me lies about my felony some times he said that --- He had an agreement in which I got less time, others that --- He can help me to get less points in the guidelines which -- wasn't true and when I made phonecalls to him He never answer my calls so I

5

> think he never want to help me in my case and He only
> would want to get money.

Pineda was initially represented in this matter by CJA counsel, Douglas Payne. On August 1, 2005, however, William L. Ricker was substituted as retained local counsel along with Michael Friedman, Atlanta Georgia. It appears from Pineda's petition that his complaint of ineffective assistance of counsel is directed at Friedman. The Court will address each of the grounds raised in turn.

**Ground One:**

Petitioner first claims that his guilty plea was not knowledgeably or voluntarily made because his attorney assured him that he would receive a sentence of no more than five years. Petitioner's claim lacks merit for several reasons. As an initial matter, he procedurally defaulted the claim and does not demonstrate cause or actual prejudice from the alleged error. Secondly, petitioner's claim is contradicted by the record in the case.

As noted above, petitioner did not file a direct appeal in this case. A petitioner is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982). Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under § 2255 only if the defendant first

6

demonstrates either cause for the default and actual prejudice or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). The petitioner here makes no claim of actual innocence and he makes no effort to establish any cause for the procedural default nor does he show any prejudice as a result.

Even if not procedurally defaulted, the petitioner's claim lacks merit either factually or legally. First of all, Pineda has offered no facts to support his allegation that any kind of assurance was given by counsel as to the sentence he would receive. Moreover, the record in this case contradicts Pineda assertion and establishes quite clearly that Pineda understood that he was not assured of receiving any particular sentence under his plea agreement with the government.

In that plea agreement, Pineda agreed that the Court could impose any lawful term of imprisonment up to the statutory maximum and he was advised that the statutory maximum penalty was a term of life imprisonment. Plea Agreement, ¶ 1(a), 2. Furthermore, petitioner acknowledged "that the sentencing determination will be based upon the entire scope of defendant's criminal conduct, defendant's criminal history, and pursuant to other factors and guidelines as set forth in the sentencing guidelines and the factors set forth in 18 U.S.C. § 3553." *Id.*, ¶ 5. In addition, the defendant acknowledged that he had "thoroughly reviewed this agreement with his attorney and defendant's attorney has fully and completely answered all of the

7

defendant's questions about this guilty plea and its consequences, including questions about sentencing . . ." *Id.*, ¶ 8.

Likewise, the transcript of the Rule 11 colloquy conducted at the time of the defendant's change of plea establishes that no assurance of a five year sentence had been given. At the time of petitioner's guilty plea, Pineda was asked if he understood that "this Court will be required to impose at least the mandatory minimum sentence of ten years which is set by statute," to which petitioner responded, "yes." (*See* Tr. Doc. 51, at 11). Petitioner acknowledged that his advisory guidelines range was not yet determined, that the Court could not determine a sentence for his case until after a presentence report had been completed and that he understood that the Court had the authority to impose a sentence more severe than the sentence called for in the guidelines. *Id.* at 12. Pineda affirmatively acknowledged that he understood that the Court could in fact impose a life sentence in his case. *Id.* at 13. Most telling of all, the petitioner stood mute in the face of the following exchange between the Court and his attorney:

> THE COURT: Mr. Freidman, Mr. Ricker, have either of you made any representations to your client as to what sentence I might impose in this case other than to give your client an estimate of his advisory guideline sentencing range and to inform him of the applicability or the mandatory minimum statute–sentence required by statute in this case?

8

> MR. FREIDMAN: No, your Honor.
>
> MR. RICKER: No, your Honor.

*Id.* at 13.

Not only does the record in this case clearly establish that petitioner was not under any misunderstanding as to the sentence the Court might impose in his case, the record also clearly establishes that his plea was knowingly and voluntarily made. During the plea colloquy, Pineda acknowledged under oath that he fully understood the nature of these proceedings. He acknowledged that all the pleadings in the case had been translated for him, that he had taken no drugs, medicine, pills or alcoholic beverage of any kind which would impair his ability to understand the proceedings and that he had read, or had read to him, the indictment in the case. He further acknowledged that he had had sufficient opportunity to discuss his case with his lawyer, that he had been advised as to the nature and meaning of the charge against him, that his attorneys had explained to him the meaning of all words used in the indictment about which he had any question and that he had been advised as to each and every element of the offense which the government must prove beyond a reasonable doubt in order to obtain a conviction against him, as well as any available defenses.

He acknowledged that his plea agreement had been read to him, that his

9

attorneys had explained all the terms and conditions of his plea agreement and that he fully understood all the terms and conditions of his plea agreement with the government. He acknowledged unequivocally that he understood his right to a trial by jury as well as the various other rights afforded to criminal defendants. *Id.* at 3, 4, 5 , 6, and 7.

It is well settled that collateral relief is not available based upon mere allegations that contradict statements the petitioner made before the Court under oath in Rule 11 proceedings. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977). A defendant is bound by admissions made at a change of plea hearing, even in the face of some evidence contradicting those statements. To do otherwise would condone the practice of defendants providing untruthful responses to questions during plea colloquies. *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir.), *cert. denied*, 528 U.S. 847 (1999). Ground one raised by the petitioner in his petition provides no basis for relief under 28 U.S.C. § 2255.

**Ground Two.**

Petitioner's claims of ineffective assistance of counsel are vague and are supported by no allegations of fact to support his conclusory statements. As noted above, a motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. Except for statements by petitioner that

10

his counsel was more optimistic at times about a potential agreement with the United States than at other times and that phone calls made to his attorney were never answered, the petitioner pleads absolutely no facts to support his claim of ineffective assistance of counsel. These allegations are not sufficient to establish deficient performance on the part of counsel, but even if they were sufficient, petitioner shows no prejudice whatsoever from these acts of counsel.

Indeed, the entire record in this case establishes that there is no basis for finding that any action by counsel might have altered the outcome of petitioner's case. As noted by the government, the drug amount was undisputed, petitioner qualified for the safety valve which permitted the Court to sentence him below the otherwise applicable statutory minimum mandatory ten year sentence and petitioner received the bottom of the undisputed advisory guideline range after the Court's consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). Petitioner's allegation of ineffective assistance of counsel provides no basis for vacating the sentence imposed by this Court.

**IV. Conclusion**

For the reasons set forth above, the Court holds petitioner's conviction and

11

sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** and his petition **DISMISSED**.

Under 28 U.S.C. § 2253(c)(2), the Court must decide whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificates of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore,

the Court will deny petitioner a certificate of appealability as to each issue raised by him.

A separate order will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

13